IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, DRYWALL TAPERS, FINISHERS & ALLIED WORKERS, LOCAL UNION 1944,<br><br>       Plaintiff,<br><br>   vs.<br><br>TNT PLASTERING & STUCCO, LLP (2012-024)<br><br>      Defendant. | CIVIL NO. 13-00238 DKW-RLP<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO VACATE ARBITRATION DECISION AND AWARD AND DENYING PLAINTIFF'S MOTION TO CONFIRM AND ENFORCE ARBITRATION DECISION AND AWARD** |

**ORDER GRANTING DEFENDANT'S MOTION TO VACATE
ARBITRATION DECISION AND AWARD AND
DENYING PLAINTIFF'S MOTION TO CONFIRM
AND ENFORCE ARBITRATION DECISION AND AWARD**


**INTRODUCTION**

Before the Court are the following motions: (1) Defendant TNT

Plastering & Stucco, LLP's ("TNT LLP") Motion to Vacate Arbitration Decision

and Award ("Motion to Vacate"); and (2) Plaintiff International Union of Painters

and Allied Trades, Drywall Tapers, Finishers & Allied Workers, Local Union 1944's ("the Union") Motion to Confirm and Enforce Arbitration Decision and Award ("Motion to Confirm").   The motions address a February 22, 2013 Arbitration Decision and Award entered by the Joint Industrial Committee ("JIC Decision"[1]) against TNT LLP and in favor of the Union.   The Court held a hearing on the motions on August 30, 2013.   After careful consideration of the supporting and opposing memoranda, the arguments of counsel, and the relevant legal authority, and for good cause appearing, the Court GRANTS the Motion to Vacate and DENIES the Motion to Confirm.

## **BACKGROUND**

On November 30, 2012, the Union filed a Step 1 Grievance against TNT LLP, pursuant to a labor agreement between the Union and the Hawaii Wall & Ceiling Industry Association of Hawaii ("HWCIA" or "Association").   TNT Ex. D (10/30/12 Step 1 Grievance).   The Step 1 Grievance was prompted when John Frigillana, the Union's business representative, observed TNT LLP performing drywall and acoustical ceiling work on a project on November 9, 2012.   Declaration

---

[1] The JIC is comprised of three members appointed by the Hawaii Wall & Ceiling Industry Association of Hawaii and three members appointed by the Union, and acted as the arbitrator in this labor matter.   *See* Mem. in Supp. of Mot. to Confirm at 3.   The JIC Decision is attached as Exhibit E to the Motion to Vacate and as Exhibit 10 to the Motion to Confirm.

of John D. Frigillana, Jr. ("3/26/13 Frigillana Decl.") ¶ 7.   According to Mr. Frigillana, the Union was not contacted for referral of employees and no dues or contributions to the Union trust funds were paid related to the job.   *Id.* ¶ 8.   The Step 1 Grievance states that TNT LLP violated the labor agreement by "double breasting and violating the Preservation of Work Clause and are also failing to recognize the Tapers Union."   TNT Ex. D.

TNT LLP is an entity separate from TNT Incorporated ("TNT Inc."), which was organized and incorporated by Stephen Teriipia on December 1, 2005. Declaration of Stephen Teriipia ("Teriipia Decl.") ¶ 2, TNT Ex. A (Articles of Incorporation).   Mr. Teriipia is TNT Inc.'s President and sole shareholder. Teriipia Decl. ¶ 2.   On or about October 15, 2009, TNT Inc., through Teriipia, executed the January 1, 2006 to December 31, 2010 Labor Agreement between the HWCIA and the Union ("2010 CBA").   TNT Ex. B; *see also* Teriipia Decl. ¶ 5. The HWCIA and Union later negotiated a new CBA, which is in effect from January 1, 2011 through December 31, 2014 ("2011 CBA").   Teriipia Decl. ¶ 8. Neither Mr. Teriipia, nor any other TNT Inc. representative, signed the 2011 CBA. *Id.* ¶ 9.

During the time that TNT Inc. was a signatory to the 2010 CBA, and prior to forming TNT LLP, Raymond J. Whitley was employed by TNT Inc. as an

3

estimator; he no longer has any role with TNT Inc.   Declaration of Raymond J. Whitley ("Whitley Decl.") ¶ 5; Teriipia Decl. ¶ 7.   On June 12, 2012, Mr. Whitley registered TNT LLP as limited liability partnership.   Whitley Decl. ¶¶ 2-3, TNT Ex. C (Partnership Registration Statement for TNT LLP).   TNT LLP operates under Mr. Whitley's general contractor's license and Mr. Whitley is TNT LLP's General Partner and Responsible Managing Employee.   Whitley Decl. ¶¶ 2-3.   Mr. Teriipia is a general partner in TNT LLP, but maintains that his role is confined to providing advice to Mr. Whitley and that he never contributed any money to the formation of TNT LLP.   Teriipia Decl. ¶¶ 11-12.   According to Mr. Whitley, none of TNT Inc.'s employees have ever worked for TNT LLP, nor did TNT LLP purchase any of TNT Inc.'s equipment.   Whitley Decl. ¶ 6.   Mr. Whitley asserts that he never executed any documents with the Union while employed by TNT Inc. Whitley Decl. ¶ 5; Teriipia Decl. ¶ 7.   And, like Mr. Teriipia, Mr. Whitley did not execute the 2011 CBA.   Whitley Decl. ¶ 9.   That is, TNT LLP has never been a signatory to any CBA with the Union.   *Id.* ¶ 10.

The Step 1 Grievance that was mailed to TNT LLP stated that the Union would proceed to Step 2 of the grievance procedure set out in the 2011 CBA if

TNT LLP did not comply with its terms by December 4, 2012.[2]   TNT Ex. D.   The

Step 1 Grievance was sent to the attention of Raymond Whitley at TNT LLP's

address, and names TNT LLP at the top of the grievance as the "Employer."

3/26/13 Frigillana Decl., Ex. 5 (USPS Certified Mail Receipt).   TNT LLP did not

respond to the Step 1 Grievance.   3/26/13 Frigillana Decl. ¶ 8.

The Union thereafter submitted the grievance to the JIC on December

10, 2012 ("Step 2 Grievance").   3/26/13 Frigillana Decl., Ex. 6 (Step 2 Grievance).

On December 11, 2012, Tabitha Field, the Union's administrative assistant, mailed

the Step 2 Grievance to TNT LLP "c/o Raymond Whitley" to the same address used

to send the Step 1 Grievance.   Declaration of Tabitha Field ("Field Decl.") ¶ 3.

Ms. Field received the certified mail receipt showing that the Step 2 Grievance was

received by Sandi Whitley on December 12, 2012 at 92-852 Palailai Street, TNT

LLP's registered address.   *Id.*, Ex. 6-3 (USPS Certified Mail Receipt); TNT LLP

Ex. C (TNT LLP Partnership Registration Statement).   On January 7, 2013, Ms.

Field mailed to TNT LLP, the JIC notice of hearing listing the date and time of the

hearing as January 24, 2013.   *Id.* ¶ 4.   Ms. Field states that she received the

---

[2] The Step 1 Grievance seeks the following remedies: back pay, compensatory damages, back union dues, delinquent contributions, liquidated damages, injunctive relief to prevent future violations, and other monetary relief for adversely affected employees, trust funds and others. *See* TNT Ex. D.

certified mail receipt showing that the hearing notice was received by Mr. Whitley on January 8, 2013 at 92-852 Palailai Street.   *Id.*, Ex. 7-4 (USPS Certified Mail Receipt).

According to Mr. Frigillana, "a hearing was held on January 24, 2013, but was reconvened to February 22, 2013 to allow for a second notice of hearing to the employer."   3/26/13 Frigillana Decl. ¶ 10.   On February 13, 2013, Ms. Field mailed the notice of the February 22, 2013 JIC hearing to TNT LLP, using the address on the return receipts from the prior mailings to prepare the mailing envelopes.   She sent the notice of hearing to TNT LLP via certified mail and regular mail.   Field Decl. ¶ 5.   Ms. Field did not receive the certified mail receipt for this mailing; instead, she "received as 'unclaimed' the certified notice to the employer." *Id.*

On February 22, 2013, Mr. Frigillana appeared before the JIC on behalf of the Union; no representative of TNT LLP appeared at the hearing.   Mr. Frigillana presented evidence to support the Union's charge of violations of the labor agreements.   The JIC rendered its Decision on February 22, the same day as the hearing, finding that TNT LLP violated the 2010 and 2011 CBAs, and that TNT LLP was an "alter ego" of TNT Inc.   Decision at 7-8.

According to Mr. Whitley, TNT LLP received but did not respond to the Step 1 Grievance because TNT LLP is not a signatory to any CBA with the Union.   TNT LLP asserts that it did not receive the Step 2 Grievance in the mail because the address listed, "92-852 Palaiali Street," is incorrect; the street name is spelled "Palailai."   Whitley Decl. ¶¶ 11-17; Teriipia Decl. ¶¶ 13-16.   According to TNT LLP, it also did not receive the January 7, 2013 mailing from the Union because it was sent to "92-852 Palalaia Street," which is also incorrect.   Whitley Decl. ¶¶ 18-19, Ex. G; Teriipia Decl. ¶¶ 13-16.   Accordingly, TNT LLP states that it had no notice of the originally scheduled January 24, 2013 hearing.   Whitley Decl. ¶¶ 14-19; Teriipia Decl. ¶¶ 13-15.   TNT LLP also maintains that it did not receive the February 13, 2013 notice of hearing via certified or regular mail. Whitley Decl. ¶¶ 15-19; Teriipia Decl. ¶¶ 15-17.   It is undisputed that neither the Union nor the JIC took additional measures to notify TNT about the February 22, 2013 arbitration hearing.   Whitley Decl. ¶ 20; Teriipia Decl. ¶ 17-18.   The Union asks the Court to confirm and enforce the award and to award fees and costs, while TNT LLP asks the Court to vacate the JIC Decision.

## STANDARD OF REVIEW

The Court's review of the JIC Decision is limited.   "Plenary review of the merits of an arbitration award would undermine the federal policy of settling

7

labor disputes by arbitration."   *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 733 (9th Cir. 1982) (citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)).   Nevertheless, a court may determine whether the parties "'agree[d] to give the arbitrator the power to make the award he made,' and whether the award drew its essence from the agreement submitted for arbitration."   *Id.* (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) (alteration in original)).

> The Ninth Circuit has recognized only three narrow exceptions to the general rule of deferring to an arbitrator's decision: 1) when the arbitrator's award does not draw its essence from the CBA; 2) when the arbitrator exceeds the boundaries of the issues submitted to him; and 3) when the award is contrary to public policy.   *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 173 (9th Cir. 1995).

*McCabe Hamilton & Renny Co., Ltd. v. Int'l Longshore & Warehouse Union, Local 142*, AFL–CIO, 624 F. Supp. 2d 1236, 1243-44 (D. Haw. 2008).

Under the Federal Arbitration Act ("FAA"),[3] the Court may vacate the JIC Decision:

---

[3] The parties do not seriously dispute the law governing the Court's review of the JIC Decision. Defendant argues that the FAA applies, whereas Plaintiff offers that "[w]hether the court's jurisdiction in the Ninth Circuit also lies under the [FAA] is not clear."   Mem. in Opp'n to Mot. to

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

## DISCUSSION

TNT LLP argues that the Court must vacate the JIC Decision because (1) the JIC and the Union failed to provide TNT LLP with notice of the hearing; (2) the JIC exceeded its jurisdiction and powers when it found that TNT LLP was an "alter ego" of TNT Inc. and therefore a signator to the 2010 and 2011 CBAs; and (3) members of the JIC Committee that rendered the decision were biased.   The Union

---

Vacate at 15.   The Union acknowledges, however, that federal courts "have turned to the FAA for guidance in labor arbitration disputes."   *Id.* at 16.
     "In the absence of the parties' clear intent to elect particular rules for arbitration, the decisions of the Ninth Circuit Court of Appeals provide a strong presumption that the [FAA] applies."   *Donnelly v. Jewel of Kahana, LLC*, Civ. 12-00347 HG-KSC, 2013 WL 1337134, at *6 (D. Haw. Mar. 28, 2013).   The labor agreements in the instant case do not specify any particular set of standards for arbitration.   Accordingly, there is no "clear intent to overcome the presumption favoring the FAA standard for judicial review of an arbitration decision."   *Id.* at *8. In any event, whether the Court applies the FAA standard or some other standard, including Hawaii's Revised Uniform Arbitration Act, the outcome would be no different, as the FAA and Hawaii standards for judicial review are nearly identical.   *Id.* at *8.

asks the Court to confirm the JIC Decision under Hawaii Revised Statutes ("HRS") § 658A-25, and argues that the JIC had the authority to determine that TNT LLP was liable under the CBA and that TNT LLP had sufficient notice of the grievance and JIC proceedings.

## I.    TNT Did Not Receive Notice of the February 22, 2013 Hearing

TNT LLP argues that the February 22, 2013 JIC hearing and Decision were not "fundamentally fair" because TNT LLP did not have any notice of the hearing.   The evidence demonstrates, and the Union agreed at the August 31, 2013 hearing, that TNT LLP *did not* receive notice of the JIC hearing set for February 22, 2013 via the certified mailing sent on February 13, 2013.   *See* TNT Ex. H; Frigillana Decl. ¶ 10; Whitley Decl. ¶¶ 14-21; Teriipia Decl. ¶¶ 15-18.   The Union argues, however, that the notice need only have been reasonably calculated under the circumstances to notify TNT LLP.

An arbitrator must grant the parties a fundamentally fair hearing.   The Ninth Circuit has explained that:

> Labor arbitrations do not provide the same procedural protections as do judicial proceedings.   As the district court recognized, an arbitrator "need only grant the parties a fundamentally fair hearing."   *Bell Aerospace Co. Division of Textron, Inc. v. Local 516, UAW*, 500 F.2d 921, 923 (2d Cir. 1974).   A hearing is fundamentally fair if it meets "the minimal requirements of fairness"-adequate notice, a hearing on the

> evidence, and an impartial decision by the arbitrator. *Ficek v. Southern Pacific Co.*, 338 F.2d 655, 657 (9th Cir. 1964), *cert. denied*, 380 U.S. 988, 85 S. Ct. 1362, 14 L. Ed. 2d 280 (1965).

*Sunshine Min. Co. v. United Steelworkers of America, AFL-CIO, CLC*, 823 F.2d 1289, 1295 (9th Cir. 1987); *see also Carpenters 46 Northern California Counties Conference Bd. v. Zcon Builders*, 96 F.3d 410, 413 (9th Cir. 1996) ("Although deference must be given to an arbitrator's decisions concerning procedural issues, it is generally recognized that the courts may consider a claim that a party to an arbitration has been denied a fundamentally fair hearing."); *Jones v. Flowers*, 547 U.S. 220, 240 (2006) (Holding that the Fourteenth Amendment's Due Process Clause requires "that a State must provide an individual with notice and opportunity to be heard before the State may deprive him of his property.").

The Court agrees with TNT LLP that, by failing to provide TNT LLP with notice, the February 22, 2013 hearing was not fundamentally fair. Generally, "mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490 (1988); *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983) ("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered

11

or well versed in commercial practice, if its name and address are reasonably ascertainable."). Here, however, TNT LLP's mailing address was misspelled on more than one occasion, and therefore, was not properly sent to TNT LLP's last known address. *See, e.g. Zcon Builders*, 96 F.3d at 414 (holding that notice was sufficient where it was addressed to the physical address where the relevant corporations maintained their offices, sent to the registered agent for service of process, the notice was actually received, and the registered agent attended the hearing); *In re La Sierra Financial Servs., Inc.*, 290 B.R. 718, 733 (9th Cir. BAP 2002) ("Mailing a timely notice by first class mail to a party's last known address is sufficient to satisfy due process. Under the 'mailbox rule,' upon proof that mail is properly addressed, stamped and deposited in an appropriate receptacle, it is presumed to have been received by the addressee in the ordinary course of the mails.") (citation omitted).

Moreover, unlike with regard to some of its prior mailings to TNT LLP, which were acknowledged by certified mail return receipts, the Union – in the specific case of the February 13, 2013 hearing notice – received the notice back "unclaimed." Instead of then taking a simple additional measure, such as a telephone call, to notify TNT LLP of the February 22, 2013 arbitration hearing, the Union did nothing. Whitley Decl. ¶ 20; Teriipia Decl. ¶¶ 17-18; Field Decl. ¶¶ 4-7.

12

What it did do was proceed undaunted with the arbitration hearing, with TNT LLP in absentia, receiving a ruling by the JIC that same day in the Union's favor.    Such a process violates any minimum standard of fundamental fairness of which the Court is aware.

The Court concludes that the notice sent to TNT LLP of the February 22, 2013 hearing was not sufficient, and therefore, TNT LLP did not receive a hearing that was "fundamentally fair."   Accordingly, the JIC exceeded its powers and "so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."   9 U.S.C. § 10(a)(4).

## II.   TNT LLP Is Not a Party to the CBAs and Did Not Consent to Arbitrate

Even if TNT LLP had received notice of the hearing, there is no dispute that it is not a signatory to either the 2010 or 2011 CBA.   The JIC, nevertheless, determined at the February 22, 2013 hearing that TNT Inc. is bound by the 2011 CBA under an "evergreen clause" in the 2010 CBA, and that TNT LLP is the "alter ego" of TNT Inc.   JIC Decision at 2, 7.   Under Ninth Circuit case law, however, the JIC did not have the authority to determine that TNT LLP was the alter ego of TNT Inc.   Generally, that decision is for the Court.

In *Carpenters 46 Northern California Counties Conference Bd. v. Zcon Builders*, defendant Zcon Builders was a member of the Associated General

13

Contractors of California, Inc., and by virtue of its membership, was a signatory to a CBA with the plaintiff carpenters union.   96 F.3d at 412.   Zcon Builders' shareholders and directors were also fifty percent owners of another corporation, Sharon Hill, which was not a signatory to the CBA, and was not a member of the contractors association.   *Id.*   The carpenters union filed a grievance against both Zcon Builders and Sharon Hill seeking compliance with the CBA.   *Id.*   At the arbitration hearing, a representative for Zcon Builders appeared only on behalf of Zcon Builders and not for Sharon Hill.   Thereafter, the arbitration award was entered against both Zcon Builders and Sharon Hill, and held that Sharon Hill was subject to the CBA as the alter ego of Zcon Builders.   *Id.* at 413-14.

On appeal, the Ninth Circuit noted that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," and that "the question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate the particulate grievance—is undeniably an issue for judicial determination."   *Id.* at 14 (citation omitted).    The Ninth Circuit explained that "Sharon Hill can only be required to submit to arbitration if it is bound by the terms of the Agreement which contain the arbitration procedure."   *Id.*   The court rejected the union's argument that "Sharon Hill, although not a signatory to the Agreement, is nevertheless bound by its terms because it is an alter ego of Zcon,

14

which did sign the Agreement." *Id.* This is so because the "issue of arbitrability is clearly reserved for the Courts, and is not, itself, a proper subject of arbitration." *Id.* at 414-15.

The *Zcon Builders* court also held that Sharon Hill never consented to have the arbitrator resolve the questions of arbitrability or alter ego, even though a representative of Zcon Builders was present at the hearing. It explained that, Sharon Hill's "refusal to participate in the arbitration hearing, for whatever reason, cannot be said to manifest such consent." *Id.* at 416 n.4 (emphases added). The Ninth Circuit held that "Sharon Hill did not, by its conduct, agree to submit the alter ego issue to the arbitrator[.]" *Id.* at 416. Like the arbitrator in *Zcon Builders*, the JIC had no authority to decide that TNT LLP was the alter ego of TNT Inc. in the present dispute.

The Union argues that *Zcon Builders* is distinguishable from the present case because the arbitrator in *Zcon Builders* did not rely on any language in the CBA for finding Sharon Hill liable and based the holding solely on the corporate structure. *See* Mem. in Opp'n to Mot. to Vacate at 24-25. Even assuming that the Union is correct on this point, it does not alter the Ninth Circuit precedent to which this Court is bound; that is, "arbitrability is clearly reserved for the Courts, and is not, itself, a proper subject of arbitration." *Zcon Builders,* 96 F.3d at 414-15.

15

Further, the Court is not persuaded by the Union's conclusory argument that the parties here "did submit to the grievance and arbitration process questions of a signatory and nonsignatory jointly performing tapering work outside the contract." Mem. in Opp'n to Mot. to Vacate at 26.   As discussed above, TNT LLP did not receive notice of the February 22, 2013 hearing, did not participate in the hearing, and did not voluntarily submit to have the JIC decide issues of arbitrability or alter ego.   Like Sharon Hill, TNT LLP was not a signatory to the CBA and was not present at either the January or February 2013 JIC hearings.   The Court concludes that the JIC exceeded its authority when it determined that TNT LLP was the alter ego of TNT Inc., and accordingly, the JIC exceeded its powers for purposes of 9 U.S.C. § 10(a)(4) when it attempted to issue a final arbitration award against TNT LLP.

Because the Court VACATES the JIC Decision on the grounds that the JIC exceeded its powers and because the February 13, 2013 was not fundamentally fair, the Court does not reach TNT LLP's additional arguments relating to bias by JIC panel members who are also trustees of the various Union trust funds.   For the same reasons, the Court DENIES the Union's request to confirm and enforce the JIC Decision, enter judgment, and award the Union its costs and fees.

---

## CONCLUSION

On the basis of the foregoing, the Court GRANTS Defendant TNT Plastering & Stucco, LLP's Motion to Vacate Arbitration Decision and Award, and DENIES Plaintiff International Union of Painters and Allied Trades, Drywall Tapers, Finishers & Allied Workers, Local Union 1944's Motion to Confirm and Enforce Arbitration Decision and Award.

IT IS SO ORDERED.

DATED: HONOLULU, HAWAI'I, November 27, 2013.

_____
Derrick K. Watson
United States District Judge

INT'L UNION OF PAINTERS AND ALLIED TRADES, DRYWALL TAPERS, FINISHERS & ALLIED WORKERS, LOCAL UNION 1944 V. TNT PLASTERING & STUCCO, LLP, CIV. NO 13-00238 DKW-RLP; ORDER GRANTING DEFENDANT'S MOTION TO VACATE ARBITRATION DECISION AND AWARD AND DENYING PLAINTIFF'S MOTION TO CONFIRM AND ENFORCE ARBITRATION DECISION AND AWARD